THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PHILADELPHIA INDEMNITY
INSURANCE COMPANY,

                       Plaintiff,

    v.

SEATTLE DRUG AND NARCOTIC
CENTER, INC.; ASPEN INSURANCE U.K.
LIMITED; and M.H., as guardian for her
minor daughter, J.M.A.,

                      Defendants.

Case No. 2:18-cv-00664-MJP

**SEATTLE DRUG AND NARCOTIC CENTER, INC. AND ASPEN INSURANCE U.K. LIMITED'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

NOTE ON MOTION CALENDAR:
December 7, 2018

FILED UNDER SEAL

## I.  INTRODUCTION

This insurance coverage dispute arises out of a minor's sex abuse claim.  The insured, Seattle Drug and Narcotic Center, Inc. ("SeaDruNar"), and one of its insurers, Aspen Insurance U.K. Limited, are challenging the refusal by the other insurer, Philadelphia Indemnity Insurance Company, to contribute anything toward a settlement negotiated with the injured minor to resolve the underlying lawsuit.  This motion presents the threshold question of whether Philadelphia's eight sex abuse liability policies, all of which cover bodily injury that occurs during the policy period, must provide coverage where the sexual abuse occurred before the Philadelphia policies, but the injuries occurred throughout the eight-year period when the policies were in effect. SeaDruNar and Aspen respectfully suggest that the answer to this question must be "yes" based

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

on the plain policy language, the applicable caselaw, and the fact that Washington requires ambiguities or uncertainties to be construed in favor of coverage.

## II.  BACKGROUND

This insurance coverage dispute arises out of an underlying sexual abuse case against SeaDruNar, a Seattle-area nonprofit long-term residential drug and alcohol treatment facility. *See generally* SeaDruNar Website (www.seadrunar.org).  SeaDruNar has provided long term therapeutic inpatient treatment to thousands of clients since 1968.  *Id.*

### A.    The Insurance Policies

Philadelphia sold SeaDruNar eight liability insurance policies covering the 2010-2018 period.  Schoeggl Decl., ¶ 3 & Ex. A (Policy Certification).  These policies all explicitly cover sex abuse claims such as the one at issue in the underlying lawsuit.  Aspen sold SeaDruNar two policies in effect from 2008 to 2010, which covered the two years before the Philadelphia policies.  *See* Schoeggl Decl., ¶ 13.

#### 1.    Philadelphia Policies

The Philadelphia policies provide continuous primary liability coverage from February 28, 2010 through February 28, 2018.[1]  Schoeggl Decl., Ex. A.  Like most modern insurance policies, the Philadelphia policies describe the liability coverage they provide in a pre-printed form called the Commercial General Liability Coverage Part ("CGL Form"), but then attach endorsements that modify the CGL Form to provide more customized insurance.  The pre-printed

---

[1] All eight primary liability policies are identified in Philadelphia's Policy Certification: Policy PHPK529885 (2/28/2010-11) ("2010 Policy"); Policy PHPK682099 (2/28/2011-12) ("2011 Policy"); Policy PHPK823571 (2/28/2012-13) ("2012 Policy"); Policy PHPK979927 (2/28/2013-14) ("2013 Policy"); Policy PHPK1134018 (2/28/2014-15) ("2014 Policy"); Policy PHPK1291100 (2/28/2015-16) ("2015 Policy"); PHPK1455296 (02/28/2016-17) ("2016 Policy"); and Policy PHPK1617636 (2/28/2017-18) ("2017 Policy").  *See* Schoeggl Decl., Ex. A.  Philadelphia also sold numerous excess and umbrella liability policies to SeaDruNar at issue in this declaratory judgment action, but that are not implicated in the present motion for partial summary judgment.

SEADRUNAR AND ASPEN'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Case No. 2:18-cv-00664-MJP) - 2

131979.0001/7482474.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

CGL Form in all of the Philadelphia policies excludes sexual abuse claims, but each of the policies restores this coverage in an endorsement.[2]

The 2010-2013 Philadelphia policies contain an endorsement titled Abuse or Molestation Exclusion/Abuse or Molestation Sublimit ("Abuse Sublimit") as part of the CGL coverage. Schoeggl Decl., Ex. B (2010-2011 Policy Exemplar) at PIIC 000173-172 & Ex. C (2012-2013 Policy Exemplar) at PIIC 001534-35.  The Abuse Sublimit endorsement specifically provides coverage for sex abuse claims like the one at issue here, but limits the amount of coverage to $1 million.  *Id*.  The Abuse Sublimit also provides that defense costs paid by the insurer erode the $1 million limit, and excludes coverage for the perpetrator or persons who learn of the abuse but "remain passive[.]"  *Id*.

The 2014-2017 Philadelphia policies move the sex abuse coverage to a separate five-page coverage part titled Sexual or Physical Abuse or Molestation Vicarious Liability Coverage Form ("Sexual Abuse Coverage Form").  Schoeggl Decl., Ex. D (2014-2017 Policy Exemplar).  The Sexual Abuse Coverage Form in the 2014-2017 policies provides broader coverage than the 2010-2013 policies.  For example, it provides that Philadelphia will pay defense costs in addition to the policy limit.  *Id*. at PIIC 002278.  The Sexual Abuse Coverage Form also contains detailed coverage provisions specifically extending coverage to claims against SeaDruNar arising out of sexual abuse of various types by its employees or agents.[3]  *Id*.

Philadelphia charged SeaDruNar a total of $804,723 in premiums for insurance between 2010 and 2018.  Schoeggl Decl., ¶ 4.

---

[2] This is because the endorsements control over the pre-printed form.  *Transcon. Ins. Co. v. Wash. Pub. Utilities Districts' Util. Sys.*, 111 Wn.2d 452, 462, 760 P.2d 337, 343 (1988).

[3] This type of coverage is valuable to SeaDruNar because Washington, like many states, allows negligence actions against facilities and employers for failing to prevent sexual abuse.  *See, e.g., C.J.C. v. Corp. of Catholic Bishop of Yakima,* 138 Wn.2d 699, 708, 985 P.2d 262, 267 (1999).

**B.     Aspen Insurance Policies**

Aspen insured SeaDruNar between February 28, 2008 and February 28, 2010.  Schoeggl Decl., ¶ 13.  Unlike the Philadelphia policies, the Aspen policies do not address sexual abuse claims; they neither specifically exclude it, nor specifically cover it.

**C.     The Underlying Sex Abuse Lawsuit and J.M.A.'s Injuries**

On October 2, 2017, M.H., as guardian for her minor daughter J.M.A., filed a lawsuit against SeaDruNar in King County Superior Court.  Schoeggl Decl., Ex. E (Underlying Complaint).  The complaint alleged that J.M.A. had been abused by her father and others while on weekend visits at SeaDruNar's facility "in or around 2008-09."  *Id.* at ¶ 9; *see generally id.* at ¶¶ 8-12.  M.H. asserted negligence claims against SeaDruNar based on alleged vicarious liability for the sexual abuse.  *Id.* at ¶ 13.  The complaint further alleged that, as a result of SeaDruNar's alleged negligence, J.M.A. suffered "mental anguish" and "emotional distress" that were alleged to be "both past and future[.]"  *Id.* ¶ 12.

Medical records produced in the course of litigation show that ███████████████████ ██████████████████████████████████████████████████.  Schoeggl Decl., Exs. F, G & O (filed under seal).  ███████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████.  *Id.*  For example, ███████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

█████████████████████████████████████████

████████████████. *Id.* These types of long-term and delayed onset injuries are typical of childhood sex abuse victims. *See C.J.C. v. Corp. of Catholic Bishop of Yakima,* 138 Wn.2d 699, 712-13, 985 P.2d 262, 269 (1999) (quoting findings of the Washington Legislature that "childhood sexual abuse is a pervasive problem and causes long lasting damage" and that "more serious injuries may be discovered many years later").

**D.     SeaDruNar Tendered the Sex Abuse Claims to Philadelphia and Aspen**

SeaDruNar tendered the underlying claim for defense and indemnity coverage under all of the Philadelphia policies, as well as both of the Aspen policies. *See* Schoeggl Decl., ¶ 12.

**1.     Aspen Agreed to Defend SeaDruNar and Funded a Settlement to Resolve the Underlying Lawsuit**

In response to the tender, Aspen concluded that while its policies did not explicitly cover sexual abuse claims, the policies did not exclude them either. Aspen thus agreed to defend SeaDruNar pursuant to a reservation of rights. Schoeggl Decl., ¶ 13. As soon as a settlement opportunity arose, Aspen conceded indemnity coverage and, as explained in more detail below, eventually paid 100% of the $1 million settlement. *See id.* at ¶ 22.

**2.     Philadelphia's Handling of the Claim**

Philadelphia took a different approach. First, on October 12, 2017, Philadelphia sent SeaDruNar an acknowledgment letter stating: "We have received notice of your loss that occurred on 03/01/2012." Schoeggl Decl., Ex. H (10/12/17 Letter). The letter's caption identified the loss date as "03/01/2012." *Id.* This is the inception date of the third of Philadelphia's eight annual policies. The letter was signed by Philadelphia's Executive Vice President, Claims, Wiliam J. Benecke, and identified Ann K. Conroy as the claim examiner that Philadelphia had assigned to the matter. *Id.*

SEADRUNAR AND ASPEN'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Case No. 2:18-cv-00664-MJP) - 5
131979.0001/7482474 1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

Philadelphia did not communicate further with SeaDruNar until December 29, 2017, some two-and-one-half months later. *Id*., Ex. I (12/29/17 Letter). Then, Philadelphia sent SeaDruNar a letter agreeing to defend SeaDruNar subject to a reservation of rights. *Id*. The letter suggested that Philadelphia had issued six primary policies to SeaDruNar, with effective dates between 2012 and 2018, and inaccurately implied that no other primary policies existed. *Id*. A few days later, Philadelphia appointed its own chosen defense counsel. *Id*. at ¶ 15. On March 21, 2018, however, Ms. Conroy, Philadelphia's claim examiner, wrote to both Aspen and SeaDruNar stating Philadelphia had now decided that none of the Philadelphia policies covered the underlying claims, and claiming that Philadelphia should only pay 10% of SeaDruNar's defense costs. *Id*., Ex. J (3/21/18 Letter). Aspen objected, and Philadelphia eventually relented and agreed to pay an equal share of the defense costs. *Id*., Ex. K (4/30/18 E-mails). On May 7, 2018, Philadelphia finally acknowledged that it had also issued policies in 2010 and 2011. *Id*., Ex. L (5/7/18 Letter). On the very same day, Philadelphia sued SeaDruNar, Aspen, and the underlying plaintiff in this court, seeking a declaration of no coverage. *See* Dkt. 1.

On July 20, 2018, M.A./J.M.A.'s attorney made a $1 million settlement demand that expired on July 27, 2018. Schoeggl Decl., Ex. M (7/20/18 Letter). About the same time, the plaintiff provided an expert report with a life care plan cost estimate of $1,523,500. *Id*., Ex. F at pp. 25-26. A few days later, SeaDruNar's personal counsel sent a letter to Philadelphia stating that "SeaDruNar unequivocally and strongly urges the insurers to accept the pending $1 million settlement demand." *Id*., Ex. N (7/24/18 E-mail). The letter went on to state SeaDruNar's view that: "(1) SeaDruNar's exposure vastly exceeds $1 million; and (2) a failure to accept the demand would be unreasonable and lead to liability for bad-faith failure to settle." *Id*.

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000 FAX: 206.223.7107

After receiving this letter, Philadelphia refused to contribute anything toward the settlement. SeaDruNar then sent a July 25, 2018 letter to Philadelphia's counsel pointing out that Philadelphia's coverage position was untenable, and stating that "Philadelphia has an obligation to cover this claim and SeaDruNar expects Philadelphia to contribute to the proffered settlement." *Id.*, Ex. O (7/25/18 Letter). Philadelphia still refused. *Id.* at ¶ 22.

In order to protect its insured against the danger of a large uninsured excess verdict, Aspen agreed to pay the entire $1 million needed to resolve the claim against SeaDruNar.[4] *Id.* SeaDruNar then assigned to Aspen its coverage and bad faith claims against Philadelphia. *Id.*, Ex. P (Assignment Agreement).

**E.    Current Procedural Background**

After Aspen agreed to fund the entire J.M.A. settlement, the parties stayed this case pending guardian ad litem approval. *See* Dkt. 33, 43. On November 1, 2018, the guardian ad litem and the King County Superior Court completed the minor settlement approval process and approved the settlement.

With the stay lifted, Aspen, SeaDruNar, and Philadelphia agreed to file simultaneous summary judgment motions seeking a ruling on Philadelphia's no-trigger-of-coverage contention as a first step toward resolving this dispute.

**III.  ARGUMENT**

In its complaint, Philadelphia contends that none of its eight primary insurance policies provide coverage for SeaDruNar because the alleged acts of sexual abuse that caused J.M.A.'s injuries occurred before Philadelphia's policies incepted. *See* Compl. (Dkt. 1) at ¶ 5.4. This

---

[4] Due to the language of their respective policies, Aspen and Philadelphia agreed that there was only $1 million in total insurance limits available to settle this claim regardless of the number of policies or insurers involved.

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

position runs afoul of the plain language in the Philadelphia policies and violates basic tenets of Washington insurance law.

**A.**     **The Underlying Sexual Abuse Claims Trigger Coverage Under the Plain Language of the Philadelphia Policies**

Under Washington law, interpretation of an insurance policy is a question of law for the court. *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52, 164 P.3d 454, 459 (2007).

**1.**     **Washington Standards for Interpreting Insurance Policies**

Courts analyzing insurance coverage issues start with the plain language of the relevant policies and apply that language as written. *Xia v. ProBuilders Specialty Ins. Co.*, 188 Wn.2d 171, 182, 400 P.3d 1234, 1240 (2017). They construe insurance policies as a whole, and give them a fair, reasonable, and sensible construction as would be given the average person purchasing insurance – not a technical construction that would be understood only by insurance professionals. *Holden v. Farmers Ins. Co. of Wash.*, 169 Wn.2d 750, 755-56, 239 P.3d 344, 347 (2010); *Bordeaux, Inc. v. Am. Safety Ins. Co.*, 145 Wn. App. 687, 693, 186 P.3d 1188, 1191 (2008). If the language is clear and unambiguous, it must be enforced as written. *Wash. Pub. Util. Districts' Utilities Sys. v. Pub. Util. Dist. No. 1 of Clallam Cty.*, 112 Wn.2d 1, 10, 771 P.2d 701, 707 (1989). Finally, courts "must 'liberally construe insurance policies to provide coverage whenever possible.'" *160 Lee St. Condo. Homeowners' Ass'n v. Mid-Century Ins. Co.*, 2018 WL 1994059, at *3 (W.D. Wash. Apr. 27, 2018) (Pechman, J.) (quoting *Bordeaux*, 145 Wn. App. at 694).

**2.**     **The Philadelphia Policies Provide Coverage When Bodily Injury – Not the Act of Abuse Causing the Injury – Takes Place During the Policy Period.**

In this case, the plain language of the Philadelphia policies makes clear that J.M.A.'s documented bodily injury during the periods of the Philadelphia policies triggers coverage under

SEADRUNAR AND ASPEN'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Case No. 2:18-cv-00664-MJP) - 8
131979.0001/7482474.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

those policies.

The 2014-2017 Philadelphia policies' Sexual Abuse Coverage Form is specifically tailored to cover vicarious liability arising out of sex abuse claims.  It covers entities such as SeaDruNar "if the insured is alleged to be liable for another person's 'abusive conduct'" due to a wide range of designed types of negligence including negligent employment and negligent supervision, inspection, or investigation of tenants or premises.[5]  Schoeggl Decl., Ex. E at PIIC 002278 at § I.1.A.  The 2010-2013 policies have less detailed language, and add sex abuse coverage by endorsement to the general liability coverage portion of the policy.  Schoeggl Decl., Ex. B at PIIC 000173 and Ex. C at PIIC 001534.  Both types of policies, however, explicitly address the precise issue raised by this motion.  Specifically, they impose two requirements that must be met.  The 2014-2017 Philadelphia policies state that:

> b.  This insurance applies to "damages"[6] because of "bodily injury"[7] only if:
>
> > (1) The "bodily injury" is caused by "abusive conduct["] that takes place in the "coverage territory"[8];
> >
> > (2) **The "bodily injury" occurs during the policy period.**

Schoeggl Decl., Ex. D at PIIC 002278 at § I.1.B (emphasis added).[9]

---

[5] It is undisputed the allegations of negligence in the plaintiff's underlying complaint fall within the vicarious liability coverage of the Sexual Abuse Coverage Form.

[6] The term "damages" means a monetary judgment, award, or settlement, but does not include fines, sanctions, penalties, punitive or exemplary damages.  Schoeggl Decl., Ex. E at PIIC 002282 at § V.5.

[7] The term "bodily injury" is defined to mean "bodily injury, sickness or disease including emotional distress or anguish including death resulting therefrom."  Schoeggl Decl., Ex. E at PIIC 002282 at § V.3.

[8] The "coverage territory" is defined to mean the United States, Puerto Rico, and Canada.  Schoeggl Decl., Ex. E at PIIC 002282 at § V.4.

[9] In the 2010-2013 Philadelphia policies, Section I.1.B of the CGL Coverage Form policies imposes the same requirements with only slight wording differences not relevant here.  *See* Schoeggl Decl., Ex. B at PIIC 000112 at § I.1.B and Ex. C at PIIC 001416 at § I.1.B.

SEADRUNAR AND ASPEN'S MOTION FOR PARTIAL SUMMARY
JUDGMENT (Case No. 2:18-cv-00664-MJP) - 9
131979.0001/7482474.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

This clause could not be more plain: coverage is triggered when bodily injury occurs during the policy period.  It contains no condition or limit based on the timing of the abuse that caused the bodily injury.  Using the test applied by Washington courts, an average purchaser of insurance like SeaDruNar would have absolutely no reason to read Section I.1.B to eliminate coverage where the sex abuse occurred prior to policy inception, but the injury caused by the sex abuse occurred while Philadelphia's policies were in force.  Therefore, consistent with the rule that policies "must be enforced 'as written if the language is clear and unambiguous,'" *160 Lee St. Condo. Homeowners' Ass'n*, 2018 WL 1994059, at *3, the Court should grant partial summary judgment and hold that coverage under the Philadelphia policies is triggered when bodily injury occurs during their policy period.

The policy itself also defeats any attempt by Philadelphia to argue that tying the trigger of coverage for its policies to the injuries rather than to the underlying acts that caused the injuries was a mistake.  This is because subsection (1) specifically addresses the abuse rather than the damage.  However, it requires only that the abuse must take place within the coverage territory (defined elsewhere in the policies as the United States and Canada) and does not require that it take place during the policy period.  Philadelphia's proffered construction would require writing in an additional requirement to subsection (1) that the acts of abuse take place during the policy period as well as within the coverage territory.  This is obviously not allowed when construing an insurance policy or any other contract.  *See Weyerhaeuser Co. v. Aetna Cas. & Sur. Co.*, 123 Wn.2d 891, 913, 874 P.2d 142, 154 (1994) (holding that if the insurers had intended to provide an allegedly intended restriction on coverage, the "requirement could have been included in the policy," but that since it was not the court would "decline to add language to the words of an insurance contract that are not contained in the parties' agreement"); *see also Xia*, 188 Wn.2d at

182 (emphasizing that "where the policy language is clear and unambiguous, this court will not modify the contract or create ambiguity where none exists"); *Panorama Vill. Condo. Owners Ass'n Bd. of Directors v. Allstate Ins. Co.,* 144 Wn.2d 130, 137, 26 P.3d 910, 914 (2001) (recognizing that "[i]t is elementary law, universally accepted, that the courts do not have the power, under the guise of interpretation, to rewrite contracts which the parties have deliberately made for themselves.").

Courts construing the language in the Philadelphia policies routinely apply its plain meaning to this precise issue and find coverage in circumstances such as this.  For example, in *Diocese of Winona v. Interstate Fire & Cas. Co.*, 858 F. Supp. 1407 (D. Minn. 1994), the court dealt with the trigger-of-coverage issue for a sex abuse claim under various liability policies.  *Id.* at 1420 n.2, *on reconsid.*, 916 F. Supp. 923 (D. Minn. 1995), *aff'd in part, rev'd in part*, 89 F.3d 1386 (8th Cir. 1996).  The court compared the insuring clauses of different policies, some of which read like the Philadelphia policies to require only injury during the policy period, while others required that both the occurrence and the injury must take place during the policy period. *Id.*  The court recognized that, under the terms of the first type of policies, the timing of the occurrence is "irrelevant" to the trigger of coverage:

> Strictly speaking, the 'occurrence' is the accident or exposure that causes the injury, not the injury itself. This distinction can be important. For example, under Aetna's policy, *the timing of the occurrence is irrelevant; only the injury must occur within the policy period in order to trigger coverage*. . . (This policy applies only to personal injury ... which occurs during the policy period.') Under Lloyd's policy, on the other hand, both the occurrence and the injury must happen within the policy period. . .

*Id.*  The court went on to hold that the Aetna policies covered injuries that were ongoing through their policy periods even though the sexual abuse had occurred prior to inception of the Aetna policies.  *Id.* at 1421.

SEADRUNAR AND ASPEN'S MOTION FOR PARTIAL SUMMARY
JUDGMENT (Case No. 2:18-cv-00664-MJP) - 11
131979.0001/7482474.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

The Philadelphia policies at issue here are like the Aetna policy described in *Diocese of Winona* because they plainly stated that their coverage is triggered by bodily injury during the policy period without regard to the timing of the sexual abuse.  They should, thus, be construed to provide coverage here.

The recent decision in *St. Paul Fire & Marine Ins. Co. v. Highline School District No. 401*, 2018 WL 4205019 (W.D. Wash. Sept. 4, 2018), is also instructive.  There, Judge Zilly held that a school district's insurance policy issued in 2009 was triggered by continuing injuries caused by a rape perpetrated in 1994.  The policy's insuring clause covered "damages because of Bodily Injury … first arising out of an Occurrence during the Coverage Period."  *Id.* at *2. Judge Zilly found that this policy language was ambiguous as to whether it was the rape or the resulting long-term bodily injury that had to occur during the policy period.  *Id.*  Finding that "the insuring clause is ambiguous, and must be construed against the drafter," Judge Zilly ruled that the 2009 policy provided coverage.  *Id.*

Unlike in *Highline School District*, the policy language in the Philadelphia policies clearly and plainly states that the injury and not the underlying abuse must occur during the policy period.  However, even if the Court were to disagree, *Highline School District* instructs that the Court should at least find an ambiguity and construe that ambiguity in favor of coverage.  *See 160 Lee St. Condo. Homeowners' Ass'n.*, 2018 WL 1994059, at *3 (potential ambiguities in insurance policy must be "liberally construed" in favor of coverage).

Finally, the Court should find that undisputed evidence shows J.M.A.'s documented ongoing physical harm, emotional trauma, and psychological injuries during Philadelphia's policy periods constitute "bodily injury" under the Philadelphia policies.  Philadelphia itself conceded this when its initial coverage letter identified the "date of loss" as within its policy

SEADRUNAR AND ASPEN'S MOTION FOR PARTIAL SUMMARY
JUDGMENT (Case No. 2:18-cv-00664-MJP) - 12
131979.0001/7482474.1

period.  *See* Schoeggl Decl., Ex. H.  This concession – which Philadelphia has never attempted

to retract – is further confirmed by J.M.A's medical records.  The records show that ███████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████████.  *See generally* Schoeggl Decl., Exs. F, G, & O.  These types of injuries

are common and well-documented long-term effects flowing from the sexual abuse of a child

and constitute "bodily injury" under liability policies.  *See generally Corp. of Catholic Bishop of*

*Yakima*, 138 Wn.2d at 712-13 (noting legislative finding that "childhood sexual abuse is a

pervasive problem and causes long lasting damage; that victims of childhood sexual abuse may

repress the memory of the abuse or be unable to connect the abuse to any injury until the statute

of limitations has run; that victims may be unable to understand or make the connection between

the abuse and the emotional damages it causes; that even though victims may be aware of injuries

related to the abuse, more serious injuries may be discovered many years later."); *Servants of*

*Paraclete, Inc. v. Great Am. Ins. Co.*, 857 F. Supp. 822, 834 (D.N.M.) ("[a]dult survivors [of

sexual abuse] commonly exhibit signs of depression, anxiety, poor self-esteem and may engage

in self-destructive behavior," which may constitute psychological and emotional injuries within

the scope of "bodily injury").  The likelihood of long-term ongoing and worsening injuries caused

by sexual abuse of a minor highlights why it made sense for Philadelphia – who charged

SeaDruNar more than $800,000 in insurance premiums – to write its coverage language to apply

broadly when "bodily injury" takes place during the policy period, regardless of when the abuse

took place.  *See* Schoeggl Decl., ¶ 4.

      For all of these reasons, the plain language of the Philadelphia policies establishes that

coverage is triggered under the Philadelphia policies.

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

**B.     Washington Courts Routinely Reject Efforts To Depart From The Plain Language Reading Of Philadelphia's "Injury During The Policy Period" Trigger of Coverage**

Philadelphia is expected to argue that the Court should impose additional conditions or limitations to alter the trigger of coverage from damage during its policy period to something that happened conveniently before its policies incepted in 2010.   Washington courts, however, have repeatedly rejected requests by both insurers and policyholders to depart from the plain language of injury-based trigger of coverage clauses such as Philadelphia's Section I.1.B.2.

In *Weyerhaeuser Co. v. Commercial Union Ins. Co.,* 142 Wn.2d 654, 15 P.3d 115 (2000), for example, an insurer with a "property damage during the policy period" trigger of coverage clause argued that even though pollution property damage took place during its policy period, the court should find no coverage because the insured did not ship waste to the contaminated landfill site until after its policy expired.  *Id*. at 676-78.  The Washington Supreme Court rejected the invitation to impose unstated limitations on the "damage during the policy period" language, finding that:    "[b]ecause the property damage occurred during the policy period and Weyerhaeuser has become obligated by reason of law [for that property damage], the plain language of the contract requires coverage." *Id.* at 679.

Similarly, in *Wellbrock v. Assurance Co. of Am.*, 90 Wn. App. 234, 951 P.2d 367 (1998), the Washington Court of Appeals analyzed coverage under a CGL policy that covered "occurrences" during the policy period.  There, a contractor injured the roots of a tree while performing excavation work *during* the policy period, which caused the tree to eventually fall on and kill a neighbor *after* the policy period.  *Id*. at 237.  In finding no coverage, the court explained that "an 'occurrence' for insurance coverage purposes is determined by reference to the time the aggrieved party sustains an injury, not the time the initial negligence or damage occurred." *Id*. The court explained that "[a]n 'occurrence' refers to 'the fruits of a negligent act, not to the

sowing of the seeds' because it is the consequence that signifies coverage, and not the cause." *Id.* at 242-43 (emphasis added). As *Wellbrock* illustrates, Washington courts apply the "injury during the policy period" trigger of coverage consistently regardless of which party is advocating for or against it. *See also Walla Walla Coll. v. Ohio Cas. Ins. Co.,* 149 Wn. App. 726, 735, 204 P.3d 961, 966 (2009) (finding no coverage under policy in force when leaking underground tank was installed because there was no proof of damage until after the policy expired). Since the policy language in the Philadelphia policies is even more clear than the policy language at issue in *Wellbrock* in stating that coverage is triggered by bodily injury during the policy period and not by the negligent act causing the injury, Washington law strongly supports applying that plain meaning.

Finally, Philadelphia may argue that even if the plain language of its policies is enforced to tie coverage to injuries during the policy period, J.M.A.'s decade of continuing and worsening injuries should be deemed to have occurred at a single point in time conveniently before the first Philadelphia policy came into force. Any such argument should be rejected as contrary to policy language and inconsistent with Washington law recognizing the "continuous trigger" concept for insurance disputes such as this one. *See, e.g., Weyerhaeuser Co. v. Fireman's Fund Ins. Co.,* 2007 WL 4420938, at *3 (W.D. Wash. Dec. 17, 2007) (explaining in pollution coverage matter that "Washington has adopted the continuous trigger rule [whereby all policies in effect when continuing injury or damage takes place are triggered] for insurance coverage in cases involving undiscovered, progressively worsening conditions causing injury or damage"); *Skinner Corp. v. Fireman's Fund Ins. Co.*, 1996 WL 376657, at *1 (W.D. Wash. Apr. 3, 1996) (applying continuous trigger in asbestos coverage case to find coverage under all policies in effect while plaintiff suffered from asbestos related diseases, not just the policies in effect when plaintiff was

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

exposed to asbestos fibers).

## IV.  CONCLUSION

For the reasons explained above, the Court should grant partial summary judgment holding that coverage for J.M.A.'s claim was triggered under each of the 2010-2017 Philadelphia primary policies.

DATED:  November 15, 2018

LANE POWELL PC

By   _s/ David M. Schoeggl_
David M. Schoeggl, WSBA No. 13638
schoeggld@lanepowell.com
David W. Howenstine, WSBA No. 41216
howenstined@lanepowell.com
Telephone: 206.223.7000
Facsimile: 206.223.7107

Attorneys for Defendants Seattle Drug and Narcotics Center, Inc. and Aspen Insurance U.K. Limited

SEADRUNAR AND ASPEN'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Case No. 2:18-cv-00664-MJP) - 16

131979.0001/7482474 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## CERTIFICATE OF SERVICE

The undersigned certifies under penalty of perjury under the laws of the United States, that on the 15th day of November, 2018, the document attached hereto was presented to the Clerk of the Court for filing and uploading to the CM/ECF system.  In accordance with their ECF registration agreement and the Court's rules, the Clerk of the Court will send e-mail notification of such filing to all CM/ECF participants.

| *Attorneys for Plaintiff Philadelphia Indemnity Insurance Company:*<br><br>Paul M. Rosner, WSBA No. 37146<br>Jennifer P. Dinning, WSBA No. 38236<br>Sarah Davenport, WSBA No. 45269<br>Soha & Lang, P.S.<br>1325 Fourth Avenue, Suite 2000<br>Seattle, WA 98101-2570<br>rosner@sohalang.com<br>dinning@sohalang.com<br>davenport@sohalang.com | *Attorneys for Defendants M.H. and J.M.A.:*<br><br>Darrell L. Cochran, WSBA No. 22851<br>Kevin M. Hastings, WSBA No. 42316<br>Pfau Cochran Vertetis Amala PLLC<br>911 Pacific Avenue, Suite 200<br>Tacoma, WA 98402<br>darrell@pcvalaw.com<br>kevin@pcvalaw.com |
|---|---|

DATED this 15th day of November, 2018, at Seattle, Washington..

*s/ Lou Rosenkranz*
Lou Rosenkranz, Legal Assistant

SEADRUNAR AND ASPEN'S MOTION FOR PARTIAL SUMMARY
JUDGMENT (Case No. 2:18-cv-00664-MJP) - 17
131979.0001/7482474 1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107