The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON,
AT SEATTLE

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY,<br><br>　　　　　　　　Plaintiff,<br><br>　vs.<br><br>SEATTLE DRUG AND NARCOTIC CENTER, INC.; ASPEN INSURANCE U.K. LIMITED; and M.H., as guardian for her minor daughter, J.M.A.<br><br>　　　　　　　　Defendants. | Cause No. 2:18-cv 00664 MJP<br><br>**PLAINTIFF PHILADELPHIA INDEMNITY INSURANCE COMPANY'S RESPONSE TO DEFENDANTS SEATTLE DRUG AND NARCOTIC CENTER, INC., AND ASPEN INSURANCE U.K. LIMITED'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**Noted on Motion Calendar: December 7, 2018**<br><br>FILED UNDER SEAL |

PLAINTIFF PHILADELPHIA INDEMNITY'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT – 0

6300.00141 kk28ge22se.004

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/FAX (206) 624-3585

**INTRODUCTION**

Plaintiff Philadelphia Indemnity Insurance Company ("Philadelphia") respectfully requests that the Court deny the Defendants' Motion for Partial Summary Judgment (the "Aspen Motion"). The Defendants fail to meet their burden under Fed. R. Civ. P. 56 to establish coverage and, in fact, the undisputed evidence clearly demonstrates that there is no coverage under the Philadelphia policies.

**I. COUNTER-STATEMENT OF THE FACTS**

Although styled as "Defendants'" motion, it actually concerns a dispute between Philadelphia and Aspen Insurance U.K. Limited ("Aspen"). The insured, Seattle Drug and Narcotic Center, Inc. ("SeaDruNar"), is a nominal signatory to the Aspen Motion; however, SeaDruNar was defended by both carriers in the underlying lawsuit. That lawsuit has now settled. Thus, SeaDruNar has been fully protected and faced no exposure in the underlying litigation, which is now fully resolved.

A factual statement was provided in Philadelphia's concurrent Motion for Partial Summary Judgment (ECF 44) and supporting Declaration of Paul Rosner (ECF 45, 45-1).[1] The relevant facts are undisputed.

Generally, SeaDruNar was sued by J.M.A. in the underlying lawsuit. J.M.A. alleged that she was sexually abused while staying overnight on weekends at SeaDruNar's facility in 2008 and 2009, where she was visiting her father, who was a patient there. J.M.A.'s last visit to the facility was in late 2009. All alleged abuse occurred during Aspen's coverage.

The first Philadelphia policy was effective from February 28, 2010 to February 28,

---

[1] Philadelphia incorporates by reference, as is fully set forth herein, its Motion and supporting materials.

PLAINTIFF PHILADELPHIA INDEMNITY'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT – 1

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/FAX (206) 624-3585

6300.00141 kk28ge22se.004

2011, after the period of the alleged abuse. There was no allegation of any bodily injury – abuse or otherwise – having occurred during the Philadelphia policy periods. Rather, J.M.A. alleged that she continued to suffer post-abuse impacts, "both past and future" during the timeframe of Philadelphia's policies such as, *e.g.*, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. There are no allegations of any new injuries, separate from the abuse that occurred in 2008 and 2009.

Although irrelevant to either party's motion, the Aspen Motion contains unfounded assertions regarding Philadelphia's claim handling, and it fails to provide a complete or accurate picture. An exhaustive response to these *ad hominem* remarks is outside the scope of the two pending motions. It should be noted that both carriers participated in Aspen's defense, with Philadelphia's defense under a reservation of rights.[2] A dispute arose between Philadelphia and Aspen over each carrier's appropriate share of the defense, with Philadelphia's initial view being that its share should be 10%. (ECF 47 at 6:10-12) However, the Aspen Motion fails to mention that Philadelphia's position was occasioned by the fact that certain of its policies provide "defense within limits," meaning that defense costs reduce available policy limits,[3] and that SeaDruNar agreed with this allocation.[4] The Aspen Motion fails to mention that Aspen threatened to force SeaDruNar to pay 40% of the defense costs.[5] The Aspen Motion also fails to mention that Philadelphia rejected this suggestion to protect

---

[2] Philadelphia does not know if Aspen's defense was under a reservation of rights because Aspen refused to exchange reservation of rights letters. Rosner Dec. Ex. A. p. 5.

[3] *Id.* at Ex. A. pp. 5-6.

[4] *Id.* at Ex. B p. 8.

[5] *Id.* at Ex. C p. 14.

PLAINTIFF PHILADELPHIA INDEMNITY'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT – 2

6300.00141 kk28ge22se.004

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/FAX (206) 624-3585

SeaDruNar and agreed to pay and did pay 50% of defense costs.[6]

In addition, the Aspen Motion fails to mention that J.M.A.'s settlement demand was directed at Aspen alone, conceding the coverage issues under the Philadelphia policies:

> [W]e are demanding the $1 million in policy coverage from the primary insurer Aspen in exchange for settlement of all claims against Seadrunar asserted by J.M.A.  If Aspen rejects this offer, then Aspen as primary insurer will become responsible to the others for any amounts above the policy limit achieved by us at trial.

(ECF 45-1 p. 36)  There was no such demand to Philadelphia.  Had Philadelphia contributed to the settlement, such a contribution would have been a rejection of J.M.A.'s demand and a counter offer, which, J.M.A. would likely have rejected for obvious reasons. The Aspen Motion fails to mention that SeaDruNar's personal counsel agreed that Aspen alone should fund the settlement.[7]

## II. COUNTER-STATEMENT OF THE ISSUES

A. Should the Court deny the Aspen Motion because there was no bodily injury during the Philadelphia policy periods?

B. Should the Court deny the Aspen Motion because Aspen's policy alone applies based on Philadelphia's anti-stacking provisions?

## III. EVIDENCE RELIED ON

In response to the Aspen Motion, Philadelphia relies on the argument and authorities herein, the Declaration of Paul Rosner in Support of Philadelphia's Response to the Defendants' Motion for Partial Summary Judgment (and attachments thereto), and the filings and pleadings previously submitted to the Court.

---

[6] Rosner Dec. Ex. D. p. 21.
[7] Rosner Dec. 2:9-13.

PLAINTIFF PHILADELPHIA INDEMNITY'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT – 3

6300.00141 kk28ge22se.004

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON  98101
(206) 624-1800/FAX (206) 624-3585

## IV. AUTHORITY AND ARGUMENT

The Aspen Motion regards the duty to indemnify rather than the duty to defend. The duty to indemnify exists only if the policy actually covers the insured's liability. *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 404, 229 P.3d 693 (2010). Aspen has the burden to prove that there is coverage under the Philadelphia policies. *See Olivine Corp. v. United Capitol Ins. Co.*, 147 Wn.2d 148, 165, 52 P.3d 494 (2002). Aspen has failed to meet its burden here.

**A.   There Is No Duty to Indemnify Under the Philadelphia Policies Because There Was No Bodily Injury during the Policy Period**

As discussed in Philadelphia's Motion, the Philadelphia policies fall into two categories for present purposes. (ECF 44 at 3:20 – 4:4). First, the 2010 through 2013 policies provide general liability coverage under Commercial General Liability Form, CG 00 01 12 07. (ECF 44 at 3:20 – 4:2). Under these policies, coverage is provided for "bodily injury" caused by an "occurrence" that occurs during the policy period. (ECF 44 at 7:5-6). Second, the 2014 through 2018 policies provide sexual abuse coverage under Sexual or Physical Abuse or Molestation Vicarious Liability Coverage Form, PI-SO-008 (1/99). (ECF 44 at 4:2-4). Under these policies, coverage is provided for "bodily injury" caused by abusive conduct that occurs during the policy period. (ECF 44 at 14:17-19). Under both categories, there must be, *inter alia*, bodily injury during the policy period to trigger coverage.

As previously noted, it is undisputed that all abuse occurred during the Aspen policy and prior to the Philadelphia policies. Aspen's argument accordingly boils down to this: The post-abuse impacts experienced by J.M.A. during the Philadelphia policies – which originated from sexual abuse that occurred prior to Philadelphia's policies – constitute a purported

PLAINTIFF PHILADELPHIA INDEMNITY'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT – 4

6300.00141 kk28ge22se.004

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/FAX (206) 624-3585

continuous injury that triggers coverage.

No Washington court has ever found coverage under these circumstances. *See Allstate Ins. Co. v. Cameron*, 2006 WL 314337, at *6 (W.D. Wash. Feb. 8, 2006) ("the court is aware of no Washington court that has imposed liability on an insurer for an act that took place entirely before a policy period and first resulted in an injury to the aggrieved party before the policy period."). The *Cameron* court rejected a similar argument where the insured claimed coverage for a death occurring during the policy period that had been caused by a blow delivered prior to the policy period. *Id*. at *5.

Other jurisdictions have flatly rejected this "continuous trigger" argument in the context of sexual abuse claims, instead holding that coverage is triggered only under policies in effect when the sexual abuse actually occurs. In *Catholic Bishop of N. Alaska v. Cont'l Ins. Co.*, 2010 WL 10095655 (D. Alaska July 30, 2010),[8] some of the underlying claimants had been abused prior to the policy period and, as J.M.A. here, alleged "post-abuse impacts" such as emotional distress, mental anguish and mental injuries that continued into the policy period. *Id*. at *9. The policy's insuring clause provided coverage for "for damages ... on account of personal injuries ... arising out of any occurrence happening during the period of insurance[.]" *Id*. at *14. In turn, the term "personal injury" included injuries such as emotional distress, mental injury and mental anguish. *Id*. at *13. Like Aspen here, the insured contended that "post-abuse impacts" arising after the initial abuse occurred were covered under the policies under a "continuous trigger" theory. *Id*. at *8. The court rejected this contention, finding no coverage for the claims and concluding "that post-abuse injuries are not covered under the … policies unless the event of sexual abuse occurred during a … policy period." *Id*. at *1.

---

[8] A copy of *Catholic Bishop of N. Alaska* is at ECF 45-1 starting at page 383.

PLAINTIFF PHILADELPHIA INDEMNITY'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT – 5

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/FAX (206) 624-3585

6300.00141 kk28ge22se.004

Similar is *Berkeley Unified Sch. Dist. v. Ins. Co. of the West*, No. A085373 (Cal. Ct. App. Mar. 27, 2000) (unpublished).[9] The underlying claimants alleged that a teacher formerly employed by the insured had abused them. Slip op. at 1-2. The insuring coverage grant applied to "personal injury . . . caused by an occurrence to which this insurance applies during the policy period," and defined "personal injury" as both "bodily injury" and "mental anguish, mental injury, shock or fright arising out of . . . bodily injury." Slip op. at 2. The California Court of Appeal held that the policy did not apply to the claimants who had been abused prior to, but not during, the policy period. Slip op. at 4. It rejected the contention that the mental distress experienced during the policy period triggered coverage under the policy:

> The students claimed that the sexual molestation caused immediate physical and psychological injury. Allegations that their mental distress continued into subsequent years does not transform their injuries into continuous or progressively deteriorating injuries…. The victim of an explosion may also suffer physical or emotional injury over several years but coverage under successive insurance policies is not triggered. Whether the victim of an explosion or sexual molestation, the injury is attributable to temporally-fixed, discrete events. The continuous injury trigger of coverage rule has no place under these circumstances.

*Id*. at 6. *See also Roman Catholic Diocese of Joliet, Inc. v. Interstate Fire Ins. Co*., 685 N.E.2d 932, 939 (Ill. App. Ct. 1997) (holding that a policy is triggered by "abuse occurring during its period of coverage"); *Society of Roman Catholic Church v. Interstate Fire & Cas. Co*., 26 F.3d 1359, 1365 (5th Cir.1994) ("each child suffered an 'occurrence' in each policy period in which he was molested"); *Interstate Fire & Cas. Co. v. Archdiocese of Portland, Oregon,* 35 F.3d 1325, 1329 (9th Cir. 1994) (holding that it is the occurrence, not the damages, that must take place during the policy period; thus, it is the repeated exposure of the victim to the negligently supervised priest, resulting in injury, that is the occurrence providing the basis for

---

[9] A copy of *Berkeley* is at ECF 45-1 starting at page 404.

PLAINTIFF PHILADELPHIA INDEMNITY'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT – 6

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/FAX (206) 624-3585

6300.00141 kk28ge22se.004

indemnification); *Diocese of Winona v. Interstate Fire & Cas. Co.,* 841 F. Supp. 894, 899 (D. Minn. 1992) (all insurers providing coverage during the period of abuse were on the risk).

These cases reflect, among other things, the essential distinction between *injury* and *damages*. An insurer is responsible when a covered injury occurs during its policy period. Once triggered, its responsibility includes all damages that result from the covered injury – regardless of whether the damages are incurred in the policy period or afterwards.[10] Damages that result from an injury in a prior policy period are not the responsibility of a post-injury insurer.

Aspen mistakenly castigates Philadelphia for its purported position that injury "should be deemed to have occurred at a single point in time conveniently before the first Philadelphia policy came into force." (ECF 47 at 15:15-16) This statement is inaccurate. Philadelphia's contention is that the alleged injury occurred during the ongoing course of abuse, which allegedly occurred each weekend J.M.A. was abused during Aspen's policy period. This position is hardly novel but has been accepted and applied by the multiple foreign authorities cited in the paragraphs above.

Finally, Aspen makes an argument directed at the policy premium that is without merit. For this, it looks at the total premium for general liability coverage. This coverage, however, applies to more than just sexual abuse including, for example, property damage and advertising injury. The gross premium amount says nothing as to the charge for sexual abuse coverage,

---

[10] This is a function of the policy language involved, which provides coverage for "those sums that the insured becomes legally obligated to pay as damages *because of bodily injury* … to which this insurance applies" where the "bodily injury … occurs during the policy period[.]" Rosner Dec. Ex. E p. 28; Ex. F p. 49. (emphasis added; internal quotations omitted). Under this language, Aspen's policy covers damages from the post-abuse impacts experienced by J.M.A. after the expiration of the Aspen policy. Although these impacts are not themselves "bodily injury," they constitute damages because of "bodily injury" (*i.e.*, because of the sexual abuse) that occurred during Aspen's policy period and are therefore covered under the Aspen policy.

PLAINTIFF PHILADELPHIA INDEMNITY'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT – 7

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/FAX (206) 624-3585

6300.00141 kk28ge22se.004

1  which was far less. For example, the sexual abuse coverage premium was $7,533 in the 2017-
2  18 policy.

3  In addition, the argument ignores what SeaDruNar actually purchased: coverage for
4  sexual abuse outside of Aspen's policy period. For example, if there were hypothetically
5  sexual abuse in 2010 and 2011, Aspen would deny coverage because it would be after the
6  Aspen policy period. In this event, the 2010-11 Philadelphia policy may provide coverage
7  (assuming, of course, that all requisites for coverage were satisfied). That is what SeaDruNar
8  paid for. The payment is not a vehicle for Aspen to shirk its responsibility.

**B.      Aspen's Policy Alone Applies Based on Philadelphia's Anti-Stacking Provisions**

As discussed in the foregoing section, Philadelphia has no duty to indemnify because its policies are not triggered given the absence of bodily injury. Even if one assumes *arguendo* the presence of such injury (which Philadelphia denies), the Aspen Motion still fails because only Aspen's policy would apply in any case under the language of the Philadelphia policies.

The 2010-13 Policies include an Abuse or Molestation Sublimit Form, which states in part:

(b) Limit of Liability:

$1,000,000 per person abused or molested regardless of the number of incidents involving that person, including defense cost;

$1,000,000 aggregate per policy period.

*Multiple incidents of abuse or molestation involving a person which take place over multiple policy periods for which this coverage is provided by us shall be deemed as one occurrence and shall be subject to the coverage and limits in effect at the time of the first incident.* (Italics added)[11]

---

[11] Rosner Dec. Ex. G p. 70; Ex. H p. 77; Ex. I p. 84; Ex. J p. 91; ECF 48-1 at 46.

PLAINTIFF PHILADELPHIA INDEMNITY'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT – 8

6300.00141 kk28ge22se.004

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/FAX (206) 624-3585

Under this language, when sexual abuse takes place over multiple policy periods, only the coverage and limits in the policy in effect at the time of the first incident of abuse apply.

The 2014-2018 policies have similar language under a Sexual or Physical Abuse or Molestation Vicarious Liability Coverage Form. It includes the following provision:

> 2. The limit of insurance shown in the Declarations for each "abusive conduct" is the most we will pay for all "damages" incurred as the result of any claim of "abusive conduct". Two or more claims for "damages" because of the same incident or interrelated incidents of "abusive conduct" shall be:
>
>    a. considered a single claim.; and
>
>    b. *such claims, whenever made, shall be assigned to only one policy (whether issued by us or any other insurer) and if that is this policy, only one limit of insurance shall apply.*  (Italics added) [12]

The form's definition of "abusive conduct" provides in part:

> "Abusive conduct" consisting of or comprising more than one act of physical abuse, sexual abuse, sexual molestation or sexual misconduct shall be deemed to take place, for all purposes within the scope of this policy, at the time of the first such act or encounter.[13]

Under this language, when abusive conduct takes place over multiple policy periods, it is deemed to take place at the time of the first act and assigned to only one policy.

These provisions function to restrict coverage and limits for ongoing abuse to the policy in which the abuse first occurs. *See Philadelphia Indem. Ins. Co. v. Olympia Early Learning Ctr.*, 980 F. Supp. 2d 1266, 1273 (W.D. Wash. 2013); *Philadelphia Indem. Ins. Co. v. Baby Fold, Inc.*, 2018 WL 4616353, at *7 (N.D. Ill. Sept. 26, 2018); *Markel Ins. Co. v. Ebner Camps, Inc.*, 2017 WL 3381005, at *6 (D. Conn. Aug. 4, 2017).

---

[12] ECF 45-1 at 202, 244, 286, 328, and 370.

[13] *Id.* at 205, 247, 289, 331, and 373.

PLAINTIFF PHILADELPHIA INDEMNITY'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT – 9

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/FAX (206) 624-3585

6300.00141 kk28ge22se.004

This restriction has two consequences here. First, it precludes coverage for J.M.A.'s claim because there was no ongoing abuse during the Philadelphia policies. Second, even if there was such abuse (which there was not), the abuse would be deemed to take place at the first incident or encounter in 2008-2009 and implicate Aspen's policy alone. The Aspen Motion fails for this separate reason as well.

**C.     Aspen's Cited Authorities Fail to Substantiate Its Position**

As anticipated, Aspen raises *St. Paul Fire & Marine Ins. Co. v. Highline Sch. Dist.*, 2018 WL 4205019 (W.D. Wash. Sept. 4, 2018), *reconsideration denied*, (W.D. Wash. Oct.11, 2018). As previously discussed, the *Highline* court never reached the issue presented here -- whether there is any bodily injury under an insurance policy in effect after the alleged sexual abuse had occurred.[14] Thus, it provides no guidance, having left the issue for another day.

The other authorities that Aspen cites are also distinguishable. *Wellbrock v. Assurance Co. of Am.*, 90 Wn. App. 234, 951 P.2d 367 (1998), addressed the converse of the situation presented here: The injury occurred after the policy period rather than before it.[15] The same is true for *Walla Walla Co. v. Ohio Cas. Ins. Co.,* 149 Wn. App. 726, 735, 204 P.3d 961 (2009), which also involved damage after the policy period.

Another cited authority, *Weyerhaeuser Co. v. Commercial Union Ins. Co.,* 142 Wn.2d 654, 15 P.3d 115 (2000), is entirely irrelevant because it was undisputed that there was property damage, in the form of environmental contamination, during the policy period. Such is not the case here.

In *Diocese of Winona v. Interstate Fire & Cas. Co.*, 858 F. Supp. 1407 (D. Minn.

---

[14] *See* ECF 44 at 10:18 – 12:17.

[15] *See* discussion at ECF 44 at 7:8 – 8:14.

PLAINTIFF PHILADELPHIA INDEMNITY'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT – 10

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/FAX (206) 624-3585

6300.00141 kk28ge22se.004

1994), unlike here, the abuse was ongoing during multiple policy periods, and the court only reviewed those policies *in effect during the periods of abuse*, concluding that the victim "continued to suffer additional personal injury as long as he endured [] abuse." *Id*. at 1420. Moreover, the Aspen Motion misconstrues the holding in claiming that "[t]he court went on to hold that the Aetna policies covered injuries that were ongoing through their policy periods even though the sexual abuse had occurred prior to inception of the Aetna policies." (ECF 47 at 11:24-27)  The Aetna policy was in effect during the first year of abuse, and the court did not find any other applicable Aetna policy in effect after the dates of abuse. *Id*. at 1421.

The Aspen Motion also cites authorities for the general proposition that psychological and other impacts may continue for prolonged periods of time after the sexual abuse has occurred. (ECF 47 at 13).  No one disputes this concept or that J.M.A. may have suffered post-abuse impacts during the Philadelphia policy periods.  This proposition, however, does not directly concern or resolve the issue here, which is whether such post-abuse impacts may trigger an insurance policy where there was no abuse during the policy period. Indeed, one of the authorities cited by Aspen, *Servants of Paraclete, Inc. v. Great Am. Ins. Co*., 857 F. Supp. 822 (D.N.M. 1994), undermines its argument, and supports Philadelphia, because it recognizes that "an insured cannot reasonably expect a policy to cover injury originating years before the policy's inception." *Id*. at 833.

Moreover, such impacts are not unique to sexual abuse but may arise in other circumstances. *See Berkeley Unified Sch. Dist.*, *supra*, slip op. at 6 ("The victim of an explosion may also suffer physical or emotional injury over several years but coverage under successive insurance policies is not triggered").  Under Aspen's theory, literally every injury

PLAINTIFF PHILADELPHIA INDEMNITY'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT – 11

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/FAX (206) 624-3585

6300.00141 kk28ge22se.004

involving, *e.g.*, emotional distress, depression or anxiety triggers coverage for years. Clearly, that is not the law.

Finally, the Aspen Motion analogizes sexual abuse with asbestos exposure and environmental contamination to argue that the "continuous trigger" applies, citing *Skinner Corp. v. Fireman's Fund Ins. Co.*, 1996 WL 376657 (W.D. Wash. Apr. 3, 1996) and *Weyerhaeuser Co. v. Fireman's Fund Ins. Co.*, 2007 WL 4420938 (W.D. Wash. Dec. 17, 2007). Its analysis of these decisions is flawed and incomplete for a couple of reasons.

First, as discussed above, other jurisdictions have rejected this "continuous trigger" argument in the context of sexual abuse. It is noteworthy that Aspen is forced to analogize to other types of injury or damage and cannot cite any decision applying the "continuous trigger" to sexual abuse.

Second, Aspen's argument fails under the very cases it cites. "Courts have imposed liability on a series of insurers where the insured was forced to defend against a claim that it had caused a third party to *unknowingly* suffer a continuous injury spanning several policy periods." *Allstate Ins. Co. v. Cameron*, 2006 WL 314337, at *5 (W.D. Wash. Feb. 8, 2006) (emphasis added). In accord with this principle, *Weyerhaeuser* and *Skinner* recognize that the "continuous trigger" may apply to situations involving, among other things, (1) *undiscovered* conditions that (2) *cause* injury or damage (3) throughout the *injury-causing process*.[16] These preconditions are absent. The injury here – sexual abuse – was obviously not "undiscovered;"

---

[16] *Skinner* at *1 ("Washington has adopted the continuous trigger rule … in cases involving *undiscovered*, progressively worsening conditions *causing* injury or damage. Under the continuous trigger rule, every policy in force throughout the *injury-causing process* is triggered."); *Weyerhaeuser* at *3 ("Washington has adopted the continuous trigger rule for insurance coverage in cases involving *undiscovered*, progressively worsening conditions *causing* injury or damage") (emphasis added).

PLAINTIFF PHILADELPHIA INDEMNITY'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT – 12

6300.00141 kk28ge22se.004

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/FAX (206) 624-3585

rather, the injury was immediate, extreme and profound.[17]  In addition, the causal condition and injury-causing process – the sexual abuse – was not existent during the Philadelphia policies, but only during Aspen's policy.  In other words, the Philadelphia policies were not "in force throughout the injury-causing process;" only Aspen's policy was.  There is no basis for the imposition of the continuous trigger here.  *See also Berkeley*, *supra*, slip op. at 5 (distinguishing sexual abuse injury from the continuous injury associated with asbestos).

## V. CONCLUSION

For the foregoing reasons, Philadelphia respectfully requests that the Court deny Defendants' Motion for Partial Summary Judgment.

DATED this 3rd day of December, 2018.

        SOHA & LANG, P.S.

By: */s/Paul Rosner*
Paul Rosner, WSBA #37146
Email address rosner@sohalang.com
Jennifer P. Dinning, WSBA # 38236
Email address dinning@sohalang.com
Sarah E. Davenport, WSBA # 45269
Email address davenport@sohalang.com
**Soha & Lang, P.S.**
1325 Fourth Avenue, Suite 2000
Seattle, WA  98101-2570
Telephone:  206-624-1800
Facsimile:  206-624-3585
Attorneys for Plaintiff Philadelphia Indemnity Insurance Company

---

[17] The sexual abuse itself is obviously physical injury. ███████████████████████████████████████████████████████████████████████████████

PLAINTIFF PHILADELPHIA INDEMNITY'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT – 13

6300.00141 kk28ge22se.004

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/FAX (206) 624-3585

## CERTIFICATE OF SERVICE

I hereby declare that on December 3, 2018, I electronically filed the foregoing **PLAINTIFF PHILADELPHIA INDEMNITY INSURANCE COMPANY'S REPLY TO RESPONSE TO MOTION FOR PARTIAL SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

| | |
|---|---|
| Darrell L. Cochran<br>Kevin M. Hastings<br>Pfau Cochran Vertetis Amala PLLC 911 Pacific Avenue, Suite 200<br>Tacoma, WA 98402<br>darrell@pcvalaw.com<br>kevin@pcvalaw.com<br>***Attorneys for Defendants M.H. and J.M.A.*** | David Schoeggl<br>David Howenstine<br>Lane Powell, PC<br>1420 Fifth Avenue, Suite 4200<br>Seattle, WA 98111<br>Email:  howenstined@lanepowell.com<br>Email:  schoeggld@lanepowell.com<br>***Attorney for Defendants Seattle Drug and Narcotic Center and Aspen Insurance U.K. Limited*** |

Dated this 3rd day of December, 2018.

*/s/Angela Murray*
_____
Angela Murray
Legal Secretary to Paul Rosner

---

PLAINTIFF PHILADELPHIA INDEMNITY'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT – 14

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/FAX (206) 624-3585

6300.00141 kk28ge22se.004