The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON,
AT SEATTLE

PHILADELPHIA INDEMNITY
INSURANCE COMPANY,

                              Plaintiff,

        vs.

SEATTLE DRUG AND NARCOTIC
CENTER, INC.; ASPEN INSURANCE U.K.
LIMITED; and M.H., as guardian for her
minor daughter, J.M.A.

                              Defendants.

Cause No. 2:18-cv 00664 MJP

**PLAINTIFF PHILADELPHIA
INDEMNITY INSURANCE
COMPANY'S REPLY TO
OPPOSITION TO MOTION FOR
PARTIAL SUMMARY JUDGMENT**

**Noted on Motion Calendar:
December 7, 2018**

**With Oral Argument Requested**

PLAINTIFF PHILADELPHIA INDEMNITY'S REPLY TO
OPPOSITION TO MOTION FOR PARTIAL SUMMARY
JUDGMENT – 0

6300.00141 km04242769.006

Plaintiff Philadelphia Indemnity Insurance Company ("Philadelphia") respectfully replies to Defendants' Opposition to Philadelphia's Motion For Partial Summary Judgment (the "Aspen Response")[1] as follows:

**A.   The Continuous Trigger Rule Does Not Apply.**

An act of sexual abuse takes place at a definite moment or moments in time and is itself an immediate injury.  Like other immediate injuries, such as a hit on the head or a bone broken in an auto accident, this injury is inherently harmful from the moment it occurs, though it may also be followed by after-effects.  In this situation, the insurer is responsible for the injury occurring during its policy period and the resulting damages whenever the damages are incurred.  *See Owens-Illinois, Inc. v. United Ins. Co.*, 138 N.J. 437, 465, 650 A.2d 974, 989 (1994) (discussed *infra*).  A later insurer, whose policy is in effect only when the later post-impacts of the injury, such as emotional distress, occur, is not responsible for them because its policy was not in effect at the time of the injury, and any risk has already been realized.

The limitations of the continuous trigger rule under Washington law demonstrate this point:

> Washington has adopted the continuous trigger rule for insurance coverage in cases involving undiscovered, progressively worsening conditions causing injury or damage.  Thus, when an insured, who is insured by multiple insurers, is responsible for damages that occurred over several policy periods, every policy in force throughout the injury-causing process is triggered and the insurers are jointly and severally liable for the entire amount, minus deductibles, of the loss.

*Weyerhaeuser Co. v. Fireman's Fund Ins. Co*., 2007 WL 4420938, at *3 (W.D. Wash. Dec. 17,

---

[1] Although both the insured, Seattle Drug and Narcotic Center, Inc. ("SeaDruNar") and Aspen Insurance U.K. Limited ("Aspen") have been named as defendants, this matter concerns a dispute between the carriers, Philadelphia and Aspen.  SeaDruNar is nominally a signatory to the Aspen Response; however, SeaDruNar was defended by both carriers in the Underlying Suit, which has now settled.  Thus, SeaDruNar has been fully protected and faced no exposure in the Underlying Suit, which is now resolved.

PLAINTIFF PHILADELPHIA INDEMNITY'S REPLY TO OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT – 1

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/Fax (206) 624-3585

6300.00141 km04242769.006

2007).

> Washington has adopted the "continuous trigger rule" for insurance coverage in cases involving undiscovered, progressively worsening conditions causing injury or damage.  Under the continuous trigger rule, every policy in force throughout the injury-causing process is triggered.

*Skinner Corp. v. Fireman's Fund Ins. Co.*, 1996 WL 376657, at *1 (W.D. Wash. Apr. 3, 1996). "Courts have imposed liability on a series of insurers where the insured was forced to defend against a claim that it had caused a third party to *unknowingly* suffer a continuous injury spanning several policy periods." *Allstate Ins. Co. v. Cameron*, 2006 WL 314337, at *5 (W.D. Wash. Feb. 8, 2006) (emphasis added).  Based on this authority, in order for the continuous trigger rule to apply, there must be (1) *undiscovered* conditions that (2) *cause* injury or damage (3) throughout the *injury-causing process*.  These limitations mean that the continuous trigger rule does not extend to policies that become effective after the injury-causing process has terminated.

Here, the continuous trigger rule, under Washington law, is not implicated as to the Philadelphia policies.  The sexual abuse was obviously not "undiscovered;" rather, the injury was immediate, extreme, and profound.  (See ECF 54 at FN 17).  In addition, the causal condition and injury-causing process – the sexual abuse – did not happen during the Philadelphia policies; it only happened during Aspen's policies.  In other words, the Philadelphia policies were not "in force throughout the injury-causing process;" only Aspen's policies were.  Consequently, there is no basis for the application of the continuous trigger rule here.

Other jurisdictions that have applied the continuous trigger rule to sexual abuse have only done so to policies in effect during the period of abuse.  For instance, in *Bishop of*

PLAINTIFF PHILADELPHIA INDEMNITY'S REPLY TO OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT – 2

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON  98101
(206) 624-1800/Fax (206) 624-3585

6300.00141 km04242769.006

*Charleston v. Century Indemnity Company*, 225 F. Supp. 3d 554 (D.S.C. 2016), the court held as follows:

> [C]overage is not limited to the policy in effect when the sexual abuse began.  Where abuse was ongoing over a number of years, the policyholder can access successive years of coverage.  This does not mean that the policyholder can access coverage for periods beginning after the last act of abuse, even though sexual abuse undoubtedly causes lifelong harm.  The [insured's] position, apparently, is that any policy purchased at any time after an act of sexual abuse provides full coverage for the life of the victim. Were that the law, insurers would need to charge premiums for each period sufficient to cover decades of potential liability.

*Id*. at 566.  In support of this analysis, the court cited to *Servants of Paraclete, Inc. v. Great Am. Ins. Co*., 857 F. Supp. 822, (D.N.M. 1994), amended on reconsideration in part, 866 F. Supp. 1560 (D.N.M. 1994), which stated, "an insured cannot reasonably expect a policy to cover injury originating years before the policy's inception.  Insurance premiums undoubtedly do not reflect such risks and the Court can only speculate as to the enormous increase in premiums were such pre-policy injury causing events to be covered." [2]  *Id.* at 834.

    In other words, the continuous trigger rule applies to sexual abuse cases only during those policies in effect when the abuse occurs.  To hold otherwise would essentially allow an insured to go without insurance during the period of sexual abuse, and then obtain coverage years later for that same abuse.  Here, the only policies in effect during the periods of abuse were the Aspen policies.

    A good example where the court found no coverage where sexual abuse occurred prior

---

[2]  Aspen falsely asserts that Philadelphia collected $800,000 in premium for Sexual Abuse Liability Coverage.  Philadelphia's policies included Commercial General Liability Coverage that was standard and provided coverage for all sorts of risks.  During most policy periods, the sexual abuse coverage was listed on the declarations page as included within the Commercial General Liability Coverage Part, however, as indicated on the declaration page for the 2017 Policy when it was parsed out from other coverages, the premium was $7,533.  Rosner Dec. Ex. A p. 11.  This properly reflects the premium for one year of sexual abuse coverage and demonstrates that a premium of $7,000 for sexual abuse coverage, if anything, is an indication that the coverage was for sexual abuse committed during the policy period.

PLAINTIFF PHILADELPHIA INDEMNITY'S REPLY TO OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT – 3

to the policy period at issue can be found in *Catholic Bishop of N. Alaska v. Cont'l Ins. Co.*, 2010 WL 10095655 (D. Alaska July 30, 2010).[3]  There, some of the underlying claimants had been abused prior to the policy period and alleged "post-abuse impacts" such as emotional distress, mental anguish and mental injuries that continued into the policy period.  *Id*. at *9. The policy's insuring clause provided coverage "for damages ... on account of personal injuries ... arising out of any occurrence happening during the period of insurance[.]"  *Id*. at *14.  In turn, the term "personal injury" included injuries such as emotional distress, mental injury and mental anguish.  *Id*. at *13.[4]  Like Aspen here, the insured contended that "post-abuse impacts" arising after the initial abuse occurred were covered under the policies under a "continuous trigger" theory.  *Id*. at *8.  The court rejected this contention, finding no coverage for the claims and concluding "that post-abuse injuries are not covered under the … policies unless the event of sexual abuse occurred during a … policy period."  *Id*. at *1.  In support of this holding, the court also reviewed case law from numerous jurisdictions, including the 5th, 8th, and 9th Circuits, demonstrating that this holding is not unique to Alaska.  *See also Roman Catholic Diocese of Joliet, Inc. v. Interstate Fire Ins. Co*., 685 N.E. 2d 932, 939 (Ill. App. Ct. 1997) (holding that a policy is triggered by "abuse occurring during its period of coverage"); *Society of Roman Catholic Church v. Interstate Fire & Cas. Co*., 26 F.3d 1359, 1365 (5th Cir. 1994) ("each child suffered an 'occurrence' in each policy period in which he was molested"); *Interstate Fire & Cas. Co. v. Archdiocese of Portland, Oregon,* 35 F.3d 1325, 1329 (9th Cir. 1994) (holding that it is the occurrence, not the damages, that must take place during the policy

---

[3] A copy of *Catholic Bishop of N. Alaska* is at ECF 45-1 starting at page 383.
[4] Contrary to Aspen's contention, the policy language discussed in *Catholic Bishop of N. Alaska* is substantively similar to the language in the Philadelphia policies because it required the *injury* to occur during the policy period.  *Id*. at *13; ECF 44 at 6:9-18, 13:5-14:4.

PLAINTIFF PHILADELPHIA INDEMNITY'S REPLY TO OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT – 4

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/FAX (206) 624-3585

6300.00141 km04242769.006

period; thus, it is the repeated exposure of the victim to the negligently supervised priest, resulting in injury, that is the occurrence providing the basis for indemnification); *Diocese of Winona v. Interstate Fire & Cas. Co.,* 841 F. Supp. 894, 899 (D. Minn. 1992) (all insurers providing coverage during the period of abuse were on the risk).[5]

These cases reflect, in the context of sexual abuse, the essential distinction between the "*injury-causing process,*" as discussed in Washington cases regarding the continuous trigger rule, and "*post-abuse impacts*" that result from those injuries.  An insurer is responsible when a covered "injury-causing process," such as sexual abuse, occurs during its policy period.  Once triggered, its responsibility includes all damages that result from the covered injury – regardless of whether the "post-abuse impacts" are incurred in its policy period or afterwards.[6]  "Post-abuse impacts" that result from an "injury-causing process" in a prior policy period are not the responsibility of a post-injury insurer.  Consequently, although Aspen is correct that psychological and other negative impacts may continue for prolonged periods of time after sexual abuse has occurred (ECF 57 at 8:24-9:2), and no one disputes that J.M.A. may have suffered post-abuse impacts during the Philadelphia policy periods, such impacts are not part of the "injury-causing process" that triggers coverage.  The "injury-causing process" was the

---

[5] Aspen contends that the Court should ignore *Berkeley Unified Sch. Dist. v. Ins. Co. of the West*, No. A085373 (Cal. Ct. App. Mar. 27, 2000) (unpublished; a copy is provided at ECF 45-1 starting at page 404).  (ECF 57 at 15:4-17).  However, the Ninth Circuit, among other courts, has looked to unpublished California decisions for guidance.  *See, e.g., Pena-Rojas v. Sessions*, 724 Fed. Appx. 622, 624 (9th Cir. 2018); *Ndigwe v. Allstate Indem. Co.*, 710 Fed. Appx. 744, 749 (9th Cir. 2017).

[6] This is a function of the policy language involved.  Here, the Aspen policies provide coverage for "those sums that the insured becomes legally obligated to pay as damages *because of bodily injury* … to which this insurance applies" where the "bodily injury … occurs during the policy period[.]"  ECF 55 at 28; 49 (emphasis added; internal quotations omitted).  Under this language, Aspen's policies cover damages from the post-abuse impacts experienced by J.M.A. after the expiration of the Aspen policies.  Although these impacts are not themselves "bodily injury," they constitute damages because of "bodily injury" (*i.e.*, because of the sexual abuse) that occurred during Aspen's policy periods and are therefore covered under the Aspen policies.

PLAINTIFF PHILADELPHIA INDEMNITY'S REPLY TO OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT – 5

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/Fax (206) 624-3585

6300.00141 km04242769.006

sexual abuse, which only occurred during Aspen's policies.  Under Aspen's theory, literally every injury involving, *e.g.*, emotional distress, depression or anxiety triggers coverage for years including when such damages following an auto accident, an assault, an explosion, a slip and fall accident, etc.  Clearly, that is not the law.  One cannot buy an auto insurance policy after an accident and obtain coverage for a liability claim on the basis that the plaintiff suffered continuing emotional distress damages during the newly purchased policy period.

Aspen also analogizes sexual abuse with asbestos exposure and environmental contamination to argue that the "continuous trigger" applies through Philadelphia's policies, citing *Skinner Corp. v. Fireman's Fund Ins. Co.*, 1996 WL 376657 (W.D. Wash. Apr. 3, 1996) and *Weyerhaeuser Co. v. Fireman's Fund Ins. Co.*, 2007 WL 4420938 (W.D. Wash. Dec. 17, 2007).  However, its analysis of these decisions is flawed and incomplete as discussed in more detail above.

Taking the asbestos analogy as an example, unlike sexual abuse, exposure to asbestos is not inherently and immediately injurious.  Asbestos cases involve true latency and uncertainty at the time of exposure whether injury will ever occur.  *See, e.g., Farrow v. Alfa Laval, Inc.*, 179 Wn. App. 652, 661 n.7 , 319 P.3d 861 (2014) (noting that "asbestos-related diseases have a long latency period between exposure and manifestation of the disease").

The etiology of asbestos-related injury is complex.  Literally everyone is exposed to asbestos: "The general population is exposed to low levels of asbestos primarily by inhalation.  Small quantities of asbestos fibers are ubiquitous in air."  Agency for Toxic Substances & Disease Registry, Toxicological Profile For Asbestos, § 6.1 (Sept. 2001) (available at http://www.atsdr.cdc.gov/toxprofiles/TP.asp?id=30&tid=4).  *See also Metro-North Commuter R.R. Co. v. Buckley*, 521 U.S. 424, 434-36 (1997) (even massive exposure to asbestos may

PLAINTIFF PHILADELPHIA INDEMNITY'S REPLY TO OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT – 6

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/FAX (206) 624-3585

6300.00141 km04242769.006

never cause illness).  Moreover, exposure is not itself an injury or else we would all be injured. Some subclinical cellular process may occur when asbestos fibers are deposited in lung tissue, but it may or may not develop into one of the potential asbestos-related injuries, depending on things like dose, time, co-generative factors, individual resistance, individual susceptibility, and chance.  Toxicological Profile for Asbestos at 1.

The typical asbestos plaintiff was occupationally or environmentally exposed to a variety of asbestos-containing products over a number of years, and carried asbestos fibers in his or her body for years, before any illness occurred.  This means that the exposure, from outside sources and from fibers harbored inside the body, is protracted over many years, and it is impossible to point to this or that distinct moment as causative.  With the same exposure, some never get sick, and those who do get sick do so only after a long, illness-free latency period.  For a long period of time, there is mystery and uncertainty whether any injury will ever exist.

It is for these reasons that courts have struggled over when liability insurance is triggered for asbestos claims (or similar kinds of claims, like gradual release of pollutants). However, even when they choose a continuous trigger, the "continuous" trigger does not continue indefinitely into the future: at best, it ends when there is no more mystery about whether injury will occur.

Sex abuse is fundamentally different.  There is a distinct moment when each act of abuse occurred.  And unlike asbestos exposure (which may be, and most often is, benign), abuse is always inherently and immediately injurious.  Sex abuse is more like being hit by a car than like being exposed to asbestos: all the follow-on complications can be attributed to a distinct origin.  That origin, the injury-causing process, is what triggers insurance coverage.

PLAINTIFF PHILADELPHIA INDEMNITY'S REPLY TO
OPPOSITION TO MOTION FOR PARTIAL SUMMARY
JUDGMENT – 7

6300.00141 km04242769.006

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/Fax (206) 624-3585

The difficulty of pinpointing the origin of the damages is pinpointing the moment of injury that triggers insurance coverage.  There is no such difficulty here.  The fact that the damages arising from sexual abuse may be continuous and progressive does not make the injury-causing process indistinct.  Aspen argues that sexual abuse may cause ongoing or new bodily injury, but provides no authority to support this argument, and in fact, the overwhelming case law states otherwise, as discussed in more detail in Section B below.

Indeed, a leading continuous-trigger asbestos decision makes exactly this point.  In contrasting asbestos cases to cases of immediate/inherent injury plus ongoing damages (using the example of a 1994 automobile accident injury that leads to later spinal deterioration and paralysis), the *Owens-Illinois, Inc. v. United Insurance Co.,* 138 N.J. 437, 650 A.2d 974 (1994) opinion notes: "[t]he policy in effect during 1994 must indemnify for all damages attributable to the 1994 accident even though the full extent of the damages or the injury will not take place until a future date." *Id.* at 465.

For these reasons, it is clear that under Washington law, the continuous trigger rule does not apply here.  Moreover, cases across the country have either limited application of the continuous trigger rule in sexual abuse cases to policies in effect at the time of abuse, or have declined to apply this rule completely.  Finally, Aspen's analogy to asbestos or pollution cases is severely flawed, as it ignores the fact that sexual abuse always results in simultaneous injury, as the injury-causing process, whereas asbestos or pollution may be unknown for years before any injury occurs, if at all.  Consequently, the continuous trigger rule does not apply where sexual abuse occurred prior to a policy period.

**B.  Bodily Injury Occurs At The Time Of Sexual Assault.**

In the Aspen Response, Aspen implies that someone could suffer sexual abuse and not

PLAINTIFF PHILADELPHIA INDEMNITY'S REPLY TO OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT – 8

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON  98101
(206) 624-1800/Fax (206) 624-3585

6300.00141 km04242769.006

1    actually be injured at the time it is committed.  This assertion is neither supported by basic

2    social tenants, nor by any legal authority, as it is obvious that sexual abuse causes bodily injury,

3    including emotional distress, at the time it occurs.  Nobody would reasonably argue otherwise.

4    While in general terms there can be a time lag between an occurrence and resulting injury (such

5    as from asbestos or pollution), in many cases, an occurrence (such as a slip-and-fall, a car

6    crash, or an explosion) results in immediate injury.  Sexual abuse occurrences are no different,

7    as they are immediately and inherently injurious.  Moreover, this social tenant is supported by

8    case law across the country.  *See, e.g., Allstate Ins. Co. v. Vose*, 2004 VT 121, n19, 177 Vt.

9    412, 869 A.2d 97 (an "act[] of sexual abuse . . . 'is not the type of act that only occasionally

10   results in harm - it is inherently harmful'") (quoting *Serecky v. Nat'l Grange Mut. Ins.*, 2004

11   VT 63, n24, 177 Vt. 58, 857 A.2d 775); *J.C. Penney Cas. Ins. Co. v. MK*, 52 Cal.3d 1009,

12   1021, 278 Cal. Rptr. 64, 804 P.2d 689 (1991) (in cases of child molestation, "[t]he act is the

13   harm"); *State Farm Fire & Cas. Co. v. Watters*, 644 N.E.2d 492, 496 (Ill. App. Ct. 1994) ("the

14   injury in sexual abuse cases is inevitable and cannot be separated from the act itself").

15           Philadelphia's policies were not in effect at the time the sexual abuse occurred, as those

16   policy periods were after the period of abuse from 2008 to 2009.  As demonstrated in Section A

17   above, under Washington law, Philadelphia's policies would only be triggered by abuse during

18   their policy periods, because sexual abuse is an "injury-causing process" that is immediate,

19   extreme, and profound.  Adding to that analysis, sexual abuse results in immediate injury,

20   meaning the bodily injury in this case occurred prior to Philadelphia's policies.  Moreover, the

21   ruling in *Catholic Bishop of N. Alaska*, as discussed in more detail in Section A above,

22   demonstrates that this same analysis applies to policy language like that found in Philadelphia's

23   policies, where coverage is provided for "bodily injury" (caused by an "occurrence" or

PLAINTIFF PHILADELPHIA INDEMNITY'S REPLY TO
OPPOSITION TO MOTION FOR PARTIAL SUMMARY
JUDGMENT – 9

6300.00141 km04242769.006

1    "abusive conduct") that occurs during the policy period.  *See Catholic Bishop of N. Alaska* at

2    *13-14.  As such, Philadelphia's policy language is clear and unambiguous, and does not create

3    a trigger of coverage from sexual abuse occurring prior to the policy periods.

4         Additionally, Aspen's policies were in effect when the sexual abuse occurred, and as

5    such, those policies were in effect when the injury occurred.  Therefore, Aspen is responsible

6    for all post-abuse impacts resulting from the sexual abuse.  Moreover, Aspen has already

7    acknowledged that sexual abuse caused bodily injury during its policy period(s) by agreeing to

8    pay the $1 million settlement in the Underlying Suit.  As such, it is not in dispute that sexual

9    abuse, and therefore the bodily injury, occurred during Aspen's policy periods.

10                                   **CONCLUSION**

11         It is undisputed that Aspen's policies were in effect at the time of the sexual abuse, and

12   that no sexual abuse occurred during Philadelphia's policies.  As such, there is no coverage

13   under Philadelphia's policies, and the court should grant Philadelphia's Motion for Partial

14   Summary Judgment.

15         DATED this 7th day of December, 2018.

16                                   SOHA & LANG, P.S.

17                                   By: */s/Paul Rosner*_____
                                         Paul Rosner, WSBA #37146
18                                       Email address rosner@sohalang.com
                                         Jennifer P. Dinning, WSBA # 38236
19                                       Email address dinning@sohalang.com
                                         Sarah E. Davenport, WSBA # 45269
20                                       Email address davenport@sohalang.com
                                         **Soha & Lang, P.S.**
21                                       1325 Fourth Avenue, Suite 2000
                                         Seattle, WA  98101-2570
22                                       Telephone:  206-624-1800
                                         Facsimile:   206-624-3585
23                                       Attorneys for Plaintiff Philadelphia Indemnity
                                         Insurance Company

PLAINTIFF PHILADELPHIA INDEMNITY'S REPLY TO
OPPOSITION TO MOTION FOR PARTIAL SUMMARY
JUDGMENT – 10

6300.00141 km04242769.006

1

## CERTIFICATE OF SERVICE

2      I hereby declare that on December 7, 2018, I electronically filed the foregoing
**PLAINTIFF PHILADELPHIA INDEMNITY INSURANCE COMPANY'S REPLY TO**
3    **OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT** with the Clerk of
the Court using the CM/ECF System which will send notification of such filing to the
4    following:

5    Darrell L. Cochran                          David Schoeggl
     Kevin M. Hastings                           David Howenstine
6    Pfau Cochran Vertetis Amala PLLC 911        Lane Powell, PC
     Pacific Avenue, Suite 200                   1420 Fifth Avenue, Suite 4200
7    Tacoma, WA 98402                            Seattle, WA 98111
     darrell@pcvalaw.com                         Email: howenstined@lanepowell.com
8    kevin@pcvalaw.com                           Email: schoeggld@lanepowell.com
     *Attorneys for Defendants M.H. and J.M.A.*  *Attorney for Defendants Seattle Drug and*
9                                                *Narcotic Center and Aspen Insurance U.K.*
                                                 *Limited*

10

       Dated this 7th day of December, 2018.

11

12                                              */s/Helen M. Thomas*

13                                              _____
                                                Helen M. Thomas
14                                              Acting Legal Secretary to Paul Rosner

15

16

17

18

19

20

21

22

23

PLAINTIFF PHILADELPHIA INDEMNITY'S REPLY TO
OPPOSITION TO MOTION FOR PARTIAL SUMMARY
JUDGMENT – 11

6300.00141 km04242769.006